# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| REASSURE AMERICA LIFE INSURANCE | : | |
| COMPANY, | : | CIVIL ACTION |
|   Plaintiff, | : | |
| | : | NO. 09-5590 |
|     v. | : | |
| | : | |
| MIDWEST RESOURCES, LTD., | : | |
|   Defendant. | : | |

**Memorandum**

YOHN, J.                                                                                    June 14, 2010

      Plaintiff, Reassure America Life Insurance Company ("Reassure"), brings this declaratory judgment action to determine its obligation to pay out benefits on a life insurance policy on the life of Samuel L. Miller, who transferred his interest in the policy to defendant, Midwest Resources, Ltd. ("Midwest"), in 2001. Defendant moves to dismiss the complaint due to lack of personal jurisdiction and venue, or, in the alternative, to transfer the action to the Northern District of Illinois, where defendant has its principal place of business.

      I conclude that defendant purposefully directed its activities at this district by purchasing an interest in the insurance policy that is the subject of this action, which was issued in Pennsylvania and insured the life of a Pennsylvania resident, and by maintaining subsequent contacts with Pennsylvania residents in furtherance of its interest in the policy. As a result, defendant is subject to personal jurisdiction in this district for the purposes of this action. I further conclude that venue is proper in this district pursuant to 28 U.S.C. § 1441(a), which governs venue for removal actions, because the action was removed from a state court located in this district. Even if venue were governed by 28 U.S.C. § 1391(a), which concerns venue for

diversity actions initially brought in federal court, venue would be proper because defendant is subject to personal jurisdiction, and therefore resides for venue purposes, in this district and because a substantial part of the events giving rise to plaintiff's claim occurred in this district. Moreover, defendant's interest in transferring this action to the Northern District of Illinois does not clearly outweigh other considerations that favor retention of this action in this district such as the convenience of plaintiff's key witness and Pennsylvania's public policy interest in regulating life insurance policies issued in this state. I will therefore deny defendant's motion to dismiss or transfer this action.

## I. Factual Background

For the purposes of this motion, the following facts are not disputed.

On November 6, 2000, Miller applied for a $1 million life insurance policy with The Midland ("Midland"), plaintiff's predecessor in interest. (Compl. ¶ 7; *id.* Ex. A at 9.)[1] At the time, Miller was seventy-five years old and had three existing life insurance policies with face values totaling $450,000. (*Id.* ¶¶ 8, 11.) Miller disclosed in the Midland application that he had four pending applications for life insurance policies with face values totaling $4 million. (*Id.* ¶ 12.) Miller further disclosed in the Midland application that he had a net worth of $1.4 million and had an annual unearned income of $85,000. (*Id.* ¶¶ 14-15.)

Miller amended his application to Midland on December 8, 2000, decreasing the face amount of the requested policy to $500,000 and changing the intended beneficiary from the "Samuel W. Miller Irrevocable Trust" to the "Samuel W. Miller Revocable Trust." (*Id.* ¶¶ 16-18.) That day, Midland issued a $500,000 life insurance policy (the "Miller Policy") to Miller.

---

[1] According to its letterhead, Midland was based in Ohio. (Pl.'s Opp'n Ex. A.) However, Miller and defendant evidently sent premium payments to Midland in Illinois. (Def.'s Mot. to Dismiss ("Def.'s Mot.") Ex. A ("Erlandsen Aff.") ¶¶ 12-13.)

(*Id.* ¶ 19.)

In April 2001, Miller contacted Darlene Erlandsen, the CEO of defendant, offering to sell the Miller Policy. (Erlandsen Aff. ¶¶ 8-9.) Miller had previously sold his interest in another $200,000 insurance policy on his life to Beneficial Assistance, Inc. on April 25, 2000—only months before his initial application to Midland—for $27,500. (Compl. ¶ 5.) According to Erlandsen, the negotiations over the sale of the Miller Policy were very brief and were conducted exclusively over the telephone. (Erlandsen Aff. ¶ 10.) Erlandsen was located at the time at defendant's only office, which is in Elgin, Illinois. (*Id.* ¶ 3.)

After the negotiations were complete, Erlandsen mailed a "settlement offer" to Miller's address in Ambler, Pennsylvania, offering to pay $12,155 for the Miller Policy. (Pl.'s Opp'n Ex. C.) The offer was contingent on receipt of numerous documents outlined in the offer letter. (*Id.*)

On May 16, 2001, Miller executed a sales agreement transferring his interest in the Miller Policy to defendant. (*Id.* Ex. D.) He also executed on that same date a "Release and Consent to Change Beneficiary of Life Insurance Policy" (*id.* Ex. E) and an authorization for release of medical information to defendant (*id.* Ex. F). All three documents were executed in Montgomery County, Pennsylvania, and were either notarized by a Pennsylvania notary or witnessed by Pennsylvania residents. In addition, Miller's wife, Patricia Miller, executed on that same date a consent to change of beneficiary, which was also executed and notarized in Montgomery County, Pennsylvania. (*Id.* Ex. H.) Miller requested that defendant deposit its payment for the Miller Policy directly into his account at a bank in Dresher, Pennsylvania. (*Id.* Ex. G.)

After purchasing Miller's interest in his life insurance policy, defendant continued to contact Miller about twice each year in order to verify his contact information and that of his treating physician. (*Id.* Ex. I.) Miller was also contractually obligated to name three individuals

who would agree to notify defendant upon his death. (*Id.* Ex. J.)

Miller passed away on January 13, 2009. (Compl. ¶ 25.) Defendant submitted a claim for benefits to plaintiff on February 26, 2009.[2] (*Id.* ¶ 26.) Upon receipt of the claim for benefits, plaintiff unsuccessfully attempted to interview Mrs. Miller, who continues to reside in Ambler, Pennsylvania, in order to ascertain whether Miller "knowingly and willingly procured the Miller Policy for the purpose of selling it to a stranger investor who did not have an insurable interest in his life" as part of a "STOLI"[3] scheme. (*Id.* ¶¶ 27-32; Pl.'s Surreply 4.) Plaintiff contends that if Miller obtained the policy with the intention of selling his interest to defendant, the policy would be void *ab initio* under Pennsylvania law. (*See* Pl.'s Opp'n 1.) Unable to determine informally whether the policy was valid, plaintiff sued defendant for declaratory judgment in the Montgomery County Court of Common Pleas.[4]

Defendant removed the action to this court and now moves to dismiss or, alternatively, to transfer for improper venue. Defendant alleges that it is an Illinois corporation, that it has never maintained an office in Pennsylvania or solicited business from Pennsylvania residents, and that it "has not purchased any other life insurance policies from any resident of Pennsylvania." (Erlandsen Aff. ¶¶ 4-7, 14.) Defendant further alleges that no representative of defendant traveled to Pennsylvania to conduct business relating to the Miller life insurance policy, that it paid all premiums on the Miller policy to Midland in Illinois and to plaintiff in Indiana, and that all of its

---

[2] The Pennsylvania law firm representing Miller's estate also contacted plaintiff on January 30, 2009, requesting that plaintiff forward all claims forms relating to the Miller life insurance policy directly to the firm's office in Jenkintown, Pennsylvania. (Pl.'s Opp'n Ex. K.) It is unclear from the record before me whether this request was intended to be in cooperation or competition with defendant's claim.

[3] "STOLI" stands for "stranger-originated life insurance." *See Principal Life Ins. Co. v. Minder*, No. 08-5899, 2009 U.S. Dist. LEXIS 56568, at *2 n.1 (E.D. Pa. July 1, 2009).

[4] Plaintiff did not name Miller's estate as a defendant.

business dealings with Midland and Reassure took place outside of Pennsylvania. (*Id.* ¶¶ 10, 12-13.)

## II. Standard of Review

### A. Personal Jurisdiction

Once a defendant has objected to personal jurisdiction, "the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). "The plaintiff meets this burden . . . by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Id.* (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987)). A motion contesting personal jurisdiction is "inherently a matter which requires resolution of factual issues outside the pleadings" and plaintiff must establish jurisdictional facts "through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Nevertheless, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

### B. Venue

When a defendant moves for dismissal of a plaintiff's claims under Federal Rule of Civil Procedure 12(b)(3), it bears the burden of proving that venue is improper. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1981). In general, when federal jurisdiction is based on diversity, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of

the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). For actions removed from state court, however, venue is governed by 28 U.S.C. § 1441(a), which requires that such actions be removed to "the district court of the United States for the district and division embracing the place where [the state court] action is pending." *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66 (1953).

Even if venue is properly laid in the district where an action is pending, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Although the decision to grant a motion for a transfer of venue under § 1404 lies within the discretion of the district court, "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *see also Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (reminding that "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request"). The defendant bears the burden of proving that venue is proper in the transferee district and that convenience and justice would be served by transferring the action to another district. *Jumara*, 55 F.3d at 879. "[U]nless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

### III. Discussion

Defendant argues that it lacks sufficient meaningful contacts with Pennsylvania to justify exercise of personal jurisdiction over it because it has not done business with any Pennsylvania residents other than Miller, because none of its agents traveled to Pennsylvania in connection

with its purchase of the Miller Policy, and because it paid all premiums on the Miller Policy to Midland in Illinois and subsequently to Reassure in Indiana. For the same reasons, defendant argues that no substantial part of the events giving rise to plaintiff's claim took place within the Eastern District of Pennsylvania and that venue in this district is therefore improper. Finally, defendant argues that, even if venue is proper in the Eastern District of Pennsylvania, the Northern District of Illinois is a preferable forum in which to try plaintiff's claims because neither party is based in Pennsylvania, because many of defendant's witnesses are located in Illinois, and because trial in that district would be less costly to defendant and either equally or less costly to plaintiff.

I conclude that defendant is subject to personal jurisdiction in Pennsylvania for the purposes of this action because defendant's contract with Miller to acquire the Miller Policy has a substantial connection both to Pennsylvania and to plaintiff's claim for declaratory judgment. Defendant has also not identified any special circumstances that would cause severe hardship if it is forced to defend itself in Pennsylvania. As a result, I will deny defendant's motion to dismiss for lack of personal jurisdiction. I further conclude that venue is proper in this district because this action was removed from a state court located in this district, and I will therefore deny defendant's motion to dismiss this action for improper venue. I also note that venue would also be proper if 28 U.S.C. § 1391(a) were to apply to this action because defendant is subject to personal jurisdiction, and therefore resides for venue purposes, in this district and because a substantial part of the events giving rise to plaintiff's claim occurred in this district. Finally, because at least one key witness resides in this district and because plaintiff's action involves a question of Pennsylvania law and the public policy of Pennsylvania, I will not disturb plaintiff's choice of forum and will deny defendant's motion to transfer this matter to the Northern District

of Illinois.

**A. Personal Jurisdiction**

Absent special circumstances such as a federal statute authorizing jurisdiction, a district court may not exercise personal jurisdiction over a defendant unless that defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania's long-arm statute is coextensive with the limits of the United States Constitution; thus, the court may exercise personal jurisdiction over defendant unless such an exercise would violate the Constitution. 42 Pa. Cons. Stat. § 5322(b); *see also Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996); *Mellon Bank*, 960 F.2d at 1221.

The Due Process Clause of the Fourteenth Amendment "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). This limitation of personal jurisdiction to states with which the defendant has meaningful contacts "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

A foreign party who maintains "continuous and systematic" contacts with a state is subject to general personal jurisdiction in that state and may be sued in that state on any claim. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952); *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 259 n.2 (3d Cir. 1998). Even where a party's contacts with the forum are insufficient to give rise to general personal jurisdiction, the party may be subject to specific

personal jurisdiction in a particular forum if the litigation in question is "related to or arises out of the defendant's contacts with the forum." *IMO Indus.*, 155 F.3d at 259; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Because plaintiff has not argued that defendant maintains continuous and systematic contacts with Pennsylvania and the facts presented do not appear to support such a conclusion, the court will restrict its personal jurisdictional analysis to specific personal jurisdiction.

"In order for specific jurisdiction to be properly exercised under the Due Process Clause, the plaintiff must satisfy a two-part test." *IMO Indus.*, 155 F.3d at 259. First, the defendant must have constitutionally sufficient "minimum contacts" with the forum state. *Id.* Next, "the court must determine, in its discretion, that to do so would comport with traditional notions of fair play and substantial justice." *Id.* (internal quotations and citation omitted); *see also Int'l Shoe*, 326 U.S. at 316.

### 1. Minimum Contacts

In order to establish minimum contacts with a forum state, "the defendant must have 'purposefully directed [its] activities' at the forum." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. Pa. 2007) (quoting *Burger King*, 471 U.S. at 472). Through these activities, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *O'Connor*, 496 F.3d at 317 (quoting *Helicopteros Nacionales*, 466 U.S. at 414). This standard "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (internal citations omitted)

(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. at 774; *World-Wide Volkswagen*, 44 U.S. at 299; and *Helicopteros Nacionales*, 466 U.S. at 417).

"[Q]uestions of personal jurisdiction do not lend themselves to categorical determinations." *Mellon Bank*, 960 F.2d at 1224-25. As a result, "[e]ach case must be judged on its particular facts." *Id.* at 1224. The court must determine whether, under the circumstances, "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.

Because the proposed basis for specific personal jurisdiction in this case is a contract between the defendant and a forum resident, the Supreme Court's decision in *Burger King* is particularly relevant. *Mellon Bank*, 960 F.2d at 1223. In that decision, the court held that determining whether a contract with a forum resident establishes minimum contacts with that forum requires a "'highly realistic' approach" that considers factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316 (1943)).

Although "an individual's contract with an out-of-state party *alone*" does not "automatically establish sufficient minimum contacts in the other party's home forum," *id.* at 478; *see also Mellon Bank*, 960 F.2d at 1223, "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [the forum] State," *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). For example, in *McGee v International Life Insurance Company*, the Supreme Court held that an out-of-state insurer was subject to personal jurisdiction in California based on its issuance of a life insurance policy to a California resident, despite the fact that the company had "never solicited or done any insurance business in

California apart from the policy involved here." 355 U.S. at 222-23. Among other considerations, the Court in *McGee* emphasized that the life insurance contract was delivered in California, the insured was a California resident, and that "crucial witnesses" familiar with the insured individual's mental state—a central issue in the litigation[5]—were likely to be found in the forum state. *Id.* at 223.

The contract between defendant and Miller, like the insurance contract in *McGee*, had a substantial connection with Pennsylvania. According to the terms of that contract, defendant acquired an interest in a life insurance policy issued in Pennsylvania on the life of a Pennsylvania resident. Moreover, the underlying offer was mailed to Miller's residence in Pennsylvania and the underlying documents were all executed in Pennsylvania. Finally, as in *McGee*, the mental state of the insured individual—*i.e.*, his intent at the time of the application to sell the policy to a third party without an insurable interest— is a central issue in this litigation and crucial witnesses are likely to be found in Pennsylvania.[6]

The contract between defendant and Miller also contemplated extensive future contacts with Miller, his family, and his physicians, all of whom were likely to be Pennsylvania residents.[7] "[P]arties who 'reach out beyond one state and create continuing relationships and obligations

---

[5] The insurer in *McGee* asserted that it had no obligation to pay benefits because the insured had committed suicide. 355 U.S. at 222.

[6] Indeed, in a case similar to this one, the Northern District of Illinois—to which defendant requests the court transfer this action—held that the sale of an interest in life insurance had no substantial connection to the *secondary purchaser's* state because the insured "executed the contract and all relevant documents in California, and [the buyer] sent payment for the acquisition of the life insurance policy to [the insured] in California," and therefore dismissed an action against the insured for lack of personal jurisdiction. *See Goldberg v. Miller*, 874 F. Supp. 874, 879 (N.D. Ill. 1995).

[7] Defendant does not argue that it was unaware that these individuals resided in Pennsylvania.

with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). Presented with a highly similar situation to the one at hand, the Superior Court of New Jersey recently held that the purchaser of a beneficial interest in a New Jersey resident's life insurance policy was subject to personal jurisdiction in New Jersey because the insured's residence was in New Jersey and because the purchaser "maintained contact with [insured's] New Jersey physicians" and assumed a continuing obligation to pay the insured's insurance premiums. *See Smith v. Life Partners, Inc.*, No. A-1151-06T1, 2007 N.J. Super. Unpub. LEXIS 472, *37-39 (N.J. Super. Ct. Oct. 3, 2007).

By contrast, in the cases that defendant cites that declined to extend jurisdiction based on a contractual relationship with a forum resident, the underlying contracts had little or no connection with activities inside the forum state or with the forum state's laws. *See, e.g.*, *Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 31-32 (3d Cir. 1993) (holding that a Philadelphia shipping company did not establish minimum contacts with Texas by contracting with a Texas company to load cargo onto a boat that was docked in Philadelphia); *Gehling v. St. George's Sch. of Med. Ltd.*, 773 F.2d 539, 543-44 (3d Cir. 1985) (holding that any contract between a Pennsylvania resident and a medical school in the West Indies would be insufficient to establish personal jurisdiction in Pennsylvania over the medical school because "the alleged contract was to be performed in Grenada[, West Indies] and . . . the alleged breach as well as the alleged resulting injury occurred there"); *Wilmington Fin., Inc. v. Tom L. Moonis, P.C.*, No. 08-2365, 2008 U.S. Dist. LEXIS 84951, at *16-17 (E.D. Pa. Oct. 21, 2008) (dismissing, for lack of personal jurisdiction, Philadelphia corporation's action against a New York law firm it had hired to perform loan closing services in New York in connection with New York real estate);

*Sheridan v. Proformance Ins. Co.*, 2008 U.S. Dist. LEXIS 58213, at *5-6 (E.D. Pa. July 30, 2008) (dismissing, for lack of personal jurisdiction, Pennsylvania residents' personal injury action against New Jersey resident's automobile insurance provider, also based in New Jersey, where underlying accident also occurred in New Jersey).

Defendant further alleges, and plaintiff concedes, that it maintains no office or property in Pennsylvania and that no agent of defendant entered Pennsylvania to negotiate the sale of the Miller Policy or otherwise to conduct business with respect to the Miller Policy. (Erlandsen Aff. ¶¶ 4-6, 10, 13.) Where a commercial defendant has "purposefully directed" its activities at a forum state, however, jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum State." *Burger King*, 471 U.S. at 476; *see also IMO Indus.*, 155 F.3d at 259; *N. Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687 (3d Cir. 1990). "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King*, 471 U.S. at 476. As a result, where the plaintiff's cause of action arises out of a contract between the parties, the courts in this district have held that the defendant's direction of "at least five letters . . . and one phone call" into Philadelphia to negotiate the contract were sufficient to give rise to jurisdiction over the defendant. *See Cozen, O'Connor, P.C. v. Fischbein*, No. 09-4931, Slip. Op. at 9 (E.D. Pa. Mar. 16, 2010).

Finally, defendant has not argued that its contract with Miller is not "substantially related" to plaintiff's claim for declaratory relief. It appears that plaintiff's claim that the Miller Policy is void for lack of an underlying insurable interest is, in fact, substantially related to defendant's choice to purchase an interest in the Miller Policy. *See O'Connor*, 496 F.3d at 324

("It is enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiffs' claims.") I therefore conclude that defendant's purchase of the Miller Policy and its continued contacts with Pennsylvania residents in furtherance of its interest in the Miller Policy are sufficient "minimum contacts" with Pennsylvania to justify personal jurisdiction over defendant for the purposes of this action.

## 2. Fair Play and Substantial Justice

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). The defendant "must present a compelling case" that the exercise of jurisdiction would be "unreasonable" in light of factors such as "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292). This balancing analysis "is discretionary with the court." *Mellon Bank*, 960 F.2d at 1222.

Defendant argues that litigating in Pennsylvania would be inconvenient as its only office is in Illinois and all of its employees are also located in Illinois. Although "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent," *Burger King*, 471 U.S. at 478 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)), the mere fact that defendant is located in Illinois does not rise to the level of unconstitutional hardship, *see*

*McGee*, 365 U.S. at 224 (holding that "inconvenience" to an insurance company as a result of being forced to litigate in a state where it did not have an office was "certainly nothing which amounts to a denial of due process"); *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."). Nor does the fact that defendant will incur some added expense in transporting its witnesses to Pennsylvania in the event of a trial rise to such a level. *See Burger King*, 471 U.S. at 483-84 ("Although the Court has suggested that inconvenience may at some point become so substantial as to achieve constitutional magnitude . . . this is not such a case." (Internal citation omitted)).

Defendant further argues that Pennsylvania lacks an interest in adjudicating the dispute because neither party resides in Pennsylvania. Although Pennsylvania's interest may be "less compelling" in cases where a non-resident seeks to invoke long-arm jurisdiction over another non-resident, *see Columbia Metal Culvert Co. v. Kaiser Indus. Corp.*, 526 F.2d 724, 730 (3d Cir. 1975), due process requirements are met provided that there is "'*any* Pennsylvania interest sufficient to justify the exercise of Pennsylvania sovereignty with respect to a given private transaction,'" *id.* (quoting *Aldens, Inc. v. Packel*, 524 F.2d 38, 45 (3d Cir. 1975)). Plaintiff alleges that Pennsylvania has a policy against recognizing insurance policies held by an individual with no insurable interest in the insured life. The policy in question is most likely subject to Pennsylvania law. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 233 (3d Cir. 2007) (noting that the "validity [of the contract] . . . and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless . . . some other state has a more significant relationship

. . . to the transaction and the parties . . . .'" (quoting Restatement (Second) of Conflict of Laws § 193 (1971)) (alterations in *Hammersmith*)); *N.Y. Life Ins. Co. v. Johnson*, 731 F. Supp. 704, 705 (E.D. Pa. 1990) (holding that "the law applicable with respect to a policy applied for in Pennsylvania is Pennsylvania law, unless it were clearly to appear that the insured's residence, when the policy was in fact issued to and received by the insured, was in a state other than Pennsylvania"), *rev'd on other grounds*, 923 F.2d 279 (3d Cir. 1991). Pennsylvania has a significant interest in seeing its public policy implemented. *Cf. Hammersmith*, 480 F.3d at 232 (noting, for the purposes of choice-of-law analysis, that New York has an interest in applying its laws to an insurance policy issued in New York to a New York resident, even though neither party in the action was a New York resident).

Defendant has not presented a "compelling case" that subjecting it to personal jurisdiction in Pennsylvania would be unreasonable or would not comport with traditional notions of fair play and substantial justice. As a result, I will deny its motion to dismiss for lack of personal jurisdiction.

### B. Venue

Defendant has moved to dismiss this action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). Alternatively, defendant moves to transfer the action to the Northern District of Illinois. I conclude that venue is proper and that a transfer is unwarranted.

### 1. Improper Venue

Both parties assume in their briefing that venue in this action is governed by 28 U.S.C. § 1391(a), which dictates where civil diversity actions may be "brought." The Supreme Court has noted, however, that § 1391 applies only to actions initially brought in federal court, not to actions such as this one that are initially filed in state court and subsequently removed to federal

court. *Polizzi*, 345 U.S. at 665. Venue for removal actions is governed by 28 U.S.C. § 1441(a), which requires that such actions be removed to "the district court of the United States for the district and division embracing the place where [the state court] action is pending." *See Polizzi*, 345 U.S. at 666. Plaintiff initially filed this action in the Montgomery County Court of Common Pleas, which is located within the Eastern District of Pennsylvania. As a result, venue is proper in this district.

Even if 28 U.S.C. § 1491(a) were to apply to this action, venue would still be proper as a "substantial part of the events or omissions giving rise to the claim occurred" in this district. *See* 28 U.S.C. § 1391(a)(2). Plaintiff's claim is based on the theory that Miller procured the Miller Policy with the intent of selling it to a party with no insurable interest in his life. Miller undisputedly resided in Pennsylvania at the time that he procured the Miller Policy and all of his activities with respect to the Miller Policy occurred in Pennsylvania. Because Miller's actions constitute a substantial part of the basis for plaintiff's claim, venue is proper under § 1391(a)(2). *See Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 444 (E.D. Pa. 1999) ("[A] court considering § 1391(a)(2) is not required to determine the 'best' forum or the forum with the most substantial events . . . rather more than one federal district may be the site of substantial events or omissions and therefore more than one federal district may be a proper venue in a given case."). Venue is also proper under 28 U.S.C. § 1391(a)(1). For the purposes of venue determinations, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). My decision that defendant is subject to personal jurisdiction in Pennsylvania based on its contact with this district necessarily implies that venue is proper in this district.

### 2. Change of Venue

28 U.S.C. § 1404(a) "provides for the transfer of a case where both the original and the requested venue are proper." *Jumara*, 55 F.3d at 878. The burden of establishing need for transfer under § 1404(a) "rests with the movant" and the "'plaintiff's choice of venue should not be lightly disturbed.'" *Id.* at 879 (quoting 1A Pt. 2 James Wm. Moore & Brett A. Ringle, *Federal Practice* ¶ 0.345[5] (2d ed. 1995)).

The decision to transfer a matter pursuant to § 1404(a) is discretionary and made on an "individualized, case-by-case basis." *Id.* at 883. In ruling on motions pursuant to § 1404(a), courts "'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum,'" including both "private and public interests." *Id.* at 879 (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction & Related Matters* § 3847 (2d ed. 1986)).

Private interests may include "plaintiff's forum preference," "the defendant's preference," "whether the claim arose elsewhere," "the convenience of the parties as indicated by their relative physical and financial condition," "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* at 879. Public interests may include "practical considerations that could make trial easy, expeditious, or inexpensive," the "local interest in deciding local controversies at home," "the public policies of the fora," and "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80.

Of these interests, the plaintiff's choice of forum is ordinarily entitled to "'paramount consideration.'" *Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321,

329 (D. Del. 2009) (quoting *Shutte*, 431 F.2d at 25). As a result, the movant must "establish that the balance of convenience of the parties and witnesses strongly favors the [defendant]." *Bergman v. Brainin*, 512 F. Supp. 972, 973 (D. Del. 1981) (*citing Shutte*, 431 F.2d at 25). Defendant argues that in this case, because plaintiff's principal place of business is not in this district, its choice of forum "should be given less deference." (Def.'s Mot. 9.) It is true that "absent a legitimate, rational reason, if the plaintiff chooses to litigate away from his or her 'home turf,' the defendant's burden is lessened." *Teleconference Sys.*, 676 F. Supp. 2d at 330. Here, however, plaintiff maintains that Mrs. Miller, a witness whom plaintiff believes to be particularly important to this litigation, lives in Pennsylvania and that retaining the action in this district would "ensure that the primary witness is available for trial." (*See* Pl.'s Opp'n 14.) Because the convenience of plaintiff's primary witness is neither an irrational nor an illegitimate basis for plaintiff's choice of forum, defendant's burden of showing that transfer is appropriate remains high.

Defendant has not established that the remaining private interests weigh heavily in its favor. First, although it may be more costly for defendant to litigate in Pennsylvania than in Illinois, defendant has not alleged that the costs would be prohibitive. Plaintiff, on the other hand, may incur extra costs if the matter is transferred to Illinois, as many of its anticipated witnesses reside in Pennsylvania. The cost factor therefore does not clearly weigh in favor of transfer.

Moreover, plaintiff's claim appears to have arisen in this district. Although the parties are "located in Indiana" and "Midwest Resources paid the premiums from Illinois to Illinois and Indiana" (Def.'s Mot. 9-10), numerous events giving rise to plaintiff's claim occurred in Pennsylvania, including Miller's initial application for the Miller Policy and Miller's execution

of contracts selling his interest in the policy to defendant. The events that occurred in Pennsylvania appear to be more material to plaintiff's claim than those that occurred in Illinois, as the primary issue appears to be Miller's subjective intent when he obtained the Miller Policy.

In addition, although some relevant witnesses may reside in Illinois, defendant has not specifically identified any such witnesses, discussed the testimony that those witnesses would provide, or explained the importance of such testimony to defendant's case. *See* 15 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 3851, at 425-32 (2d ed. 1986) ("The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."); *Austin v. Johns-Manville Corp.*, 524 F. Supp. 1166, 1169 (E.D. Pa. 1981) (same). Nor has defendant alleged that any of the witnesses residing in Illinois would "actually be unavailable for trial" in Pennsylvania. *See Jumara*, 55 F.3d at 879 (noting that convenience of the witnesses should be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora"). Plaintiff, on the other hand, intends to rely primarily on the testimony of Mrs. Miller, an "elderly woman who resides in Ambler, Pennsylvania." (Pl.'s Surreply 4.)[8] Similarly, defendant has not alleged that any of the documents located in Illinois "could not be produced" in Pennsylvania. *See Jumara*, 55 F.3d at 879.

The relevant public interests also weigh in favor of retaining venue in Pennsylvania. Plaintiff alleges, and defendant does not contest, that the validity of the Miller Policy is governed

---

[8] Defendant suggests that any difficulty Mrs. Miller would experience traveling could be accommodated by deposing her in Pennsylvania. (Def.'s Reply 3.) Such an accommodation would not address any difficulty in transporting Mrs. Miller to Illinois in the event of a trial. If this matter were to be transferred to the Northern District of Illinois, plaintiff might be reduced to reading Mrs. Miller's deposition at trial—clearly not a preferred method for presenting the testimony of such a critical witness. Moreover, defendant has not explained why any hardship to its own witnesses in Illinois could not similarly be remedied by deposing them there.

by Pennsylvania law. (Pl.'s Opp'n 15 (citing *N.Y. Life Ins.*, 731 F. Supp. at 705).) Pennsylvania is the natural location to adjudicate a claim based in Pennsylvania public policy. *Cf. Reserve Capital, LLC v. CLB Dynasty Trust 2002*, No. 05-C-6556, 2006 U.S. Dist. LEXIS 30093, at *34-35 (N.D. Ill. Apr. 17, 2006) ("[A]lthough we are capable of applying New Jersey law under appropriate circumstances, because New Jersey courts are more practiced in the application of New Jersey contract law, the choice of law provision weighs slightly on the side of transfer."). Defendant has not cited any substantive public policy of Illinois that would be better served by transfer. Moreover, as noted above, the primary events giving rise to plaintiff's claim occurred in Pennsylvania. As a result, the "local interest in deciding local controversies at home," "the public policies of the fora," and "the familiarity of the trial judge with the applicable state law in diversity cases" all weigh against transfer. *Jumara*, 55 F.3d at 879-80.

Retaining this matter in Pennsylvania is consistent with this district's recent decision in *Cozen, O'Connor, P.C. v. Fischbein*, which defendant has cited in its reply. In that decision, the court transferred a breach-of-contract action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) because most of the events occurred there, including the formation, performance, and breach of the contract at issue, and because New York had "the greater interest in regulating contracts executed, performed, and allegedly breached in New York" than did Pennsylvania. *See Cozen, O'Connor*, No. 09-4931, Slip Op. at 13-14. Here, the primary issue is the validity of the Miller Policy, which was formed in Pennsylvania, concerned the life of a Pennsylvania resident, and was regulated by Pennsylvania law. I therefore conclude that this action should remain in the Eastern District of Pennsylvania.

**IV. Conclusion**

Plaintiff has met its burden of showing that defendant established minimum contacts with

Pennsylvania, that plaintiff's claim arises out of or relates to those contacts, and that exercise of jurisdiction in Pennsylvania would not violate principles of fair play and substantial justice. As a result, I will deny defendant's motion to dismiss for lack of personal jurisdiction. In addition, as this is a removal action, venue is proper in this district because plaintiff originally filed this action in a state court within this district. *See* 28 U.S.C. § 1441(a). Even if this action initially had been brought in federal court, venue would be proper in this district because defendant is subject to personal jurisdiction, and therefore resides for venue purposes, in this district and because a substantial part of the events giving rise to plaintiff's claim occurred in this district. *See* 28 U.S.C. § 1391(a). Moreover, because defendant has not met its burden of showing that the balance of public and private interests is in favor of transfer, I will deny defendant's motion to transfer this action to the Northern District of Illinois.