## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REASSURE AMERICA LIFE INSURANCE COMPANY <br> Plaintiff <br> v. <br><br> MIDWEST RESOURCES, LTD. <br> Defendant. | : <br> : <br> : <br> : CIVIL ACTION NO. 09-cv-5590 <br> : <br> : <br> : <br> : |

## DEFENDANT MIDWEST RESOURCES, LTD.'S
## ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS

Defendant-Counterclaim Plaintiff, Midwest Resources, Ltd. ("Midwest Resources"), by and through its attorneys, Vaira & Riley, P.C., hereby answers Plaintiff-Counterclaim Defendant, Reassure America Life Insurance Company's ("Reassure America"), Complaint and asserts its Counterclaims against Reassure America as follows:

1.      Admitted in part and denied in part.  It is admitted that this is an action for Declaratory Judgment under Pennsylvania Code § 1601, and that Reassure America seeks a declaration establishing its rights and obligations under a policy of life insurance on the life of Samuel W. Miller (the "Miller Policy"), who is now deceased.  It is specifically denied that there is evidence that the Miller Policy is void or voidable, due to a lack of insurable interest at inception and/or that the Miller Policy is void or voidable.  It is specifically denied that there is an actual controversy of a justiciable nature concerning the rights and obligations of the parties under the Miller Policy.  By way of further answer, the right of Midwest Resources to collect the death benefits under the Miller Policy is clear and there are no valid reasons to deny the claim.

2.      Admitted.

3.      Admitted.

4.      After reasonable investigation, Midwest Resources is without knowledge or information sufficient to admit or deny the allegations of paragraph 4 of the Complaint, and, accordingly, those allegations are denied.

5.      After reasonable investigation, Midwest Resources is without knowledge or information sufficient to admit or deny the allegations of paragraph 5 of the Complaint, and, accordingly, those allegations are denied.

6.      After reasonable investigation, Midwest Resources is without knowledge or information sufficient to admit or deny the allegations of paragraph 6 of the Complaint, and, accordingly, those allegations are denied.

7.      Admitted in part and denied in part.  It is admitted that a document purportedly a copy of a life insurance application (the "Application"), dated November 6, 2000, submitted by Mr. Miller to The Midland Life Insurance Company ("The Midland") for a life insurance policy in the amount of $1,000,000.00 is attached to Plaintiff's Complaint as Exhibit A.  It is admitted that the Miller policy was issued by The Midland. The remaining allegations of paragraph 7 are denied.

8.      It is admitted that a document, purportedly a copy of the Application is attached to Plaintiff's Complaint as Exhibit A.  By way of further answer, the Application is the best evidence of its contents and speaks for itself.

9.      It is admitted that a document, purportedly a copy of the Application is attached to Plaintiff's Complaint as Exhibit A.  By way of further answer, the Application is the best evidence of its contents and speaks for itself.

10.     It is admitted that a document, purportedly a copy of the Application is attached to Plaintiff's Complaint as Exhibit A.  By way of further answer, the Application is the best evidence of its contents and speaks for itself.  After reasonable investigation, Midwest Resources is without  knowledge or information sufficient to admit or deny whether the Application was signed in the Commonwealth of Pennsylvania, and, accordingly, those allegations are denied.

11.     It is admitted that a document, purportedly a copy of the Application is attached to Plaintiff's Complaint as Exhibit A.  By way of further answer, the Application is the best evidence of its contents and speaks for itself.

12.     It is admitted that a document, purportedly a copy of the Application is attached to Plaintiff's Complaint as Exhibit A.  By way of further answer, the Application is the best evidence of its contents and speaks for itself.

13.     It is admitted that a document, purportedly a copy of the Application is attached to Plaintiff's Complaint as Exhibit A.  By way of further answer, the Application is the best evidence of its contents and speaks for itself.

14.     It is admitted that a document, purportedly a copy of the Application is attached to Plaintiff's Complaint as Exhibit A.  By way of further answer, the Application is the best evidence of its contents and speaks for itself.

15.     It is admitted that a document, purportedly a copy of the Application is attached to Plaintiff's Complaint as Exhibit A.  By way of further answer, the Application is the best evidence of its contents and speaks for itself.

16.     It is admitted that a document purportedly a copy of an amendment to the Application (the "Amendment") is attached to Plaintiff's Complaint as Exhibit A.  By

3

way of further answer, the Amendment is the best evidence of its contents and speaks for itself.

17.     It is admitted that a document purportedly a copy of the Amendment is attached to Plaintiff's Complaint as Exhibit A.  By way of further answer, the Amendment is the best evidence of its contents and speaks for itself.

18.     It is admitted that a document purportedly a copy of the Amendment is attached to Plaintiff's Complaint as Exhibit A.  By way of further answer, the Amendment is the best evidence of its contents and speaks for itself.

19.     Admitted.

20.     It is admitted that the initial annual premium payment for the Miller Policy is set forth in the Miller Policy.  By way of further answer, the Miller Policy is the best evidence of its contents and speaks for itself.  By way of further answer, Midwest Resources paid semi-annual premium payments in the amount of $7,155.20.

21.     Admitted in part and denied in part.  It is admitted that on May 7, 2001, Mr. Miller entered into an agreement of sale with Midwest Resources to assign and transfer all right, title and interest in and to the Miller Policy in exchange for $12,155.00. After reasonable investigation, Midwest Resources is without knowledge or information sufficient to admit or deny the remaining allegations of paragraph 21 of the Complaint, and, accordingly, those allegations are denied.

22.     Admitted.

23.     Admitted.

24.     Admitted.

4

25.     Admitted.

26.     Admitted.

27.     Denied.  By way of further answer, Reassure America was on notice by June 2001, that Midwest Resources had become the owner and beneficiary of the Miller Policy and Reassure America never raised any objection to the validity of the Miller Policy.  Reassure America collected over $100,000 in premium payments from Midwest Resources and waited eight years beyond the period of the contestability of the Miller Policy to raise an issue regarding the validity of the Miller Policy.  By way of further answer, Reassure America never provided Midwest Resources with a legitimate basis to deny its claim for the death benefits under the Miller Policy despite the disclosure in June 2001 that Midwest Resources became the owner and beneficiary of the Miller Policy.  By way of further answer, while Midwest Resources provided all information to Reassure America concerning the Miller Policy, Reassure America, without any valid basis to do so, failed to pay the proceeds under the Miller Policy and failed to communicate with Midwest Resources for months; instead, it filed this lawsuit.

28.     After reasonable investigation, Midwest Resources is without knowledge or information sufficient to admit or deny the allegations of paragraph 28 of the Complaint, and, accordingly, denies those allegations.

29.     It is admitted that Midwest Resources provided assistance to Reassure America in order to validate the Miller Policy.  By way of further answer, Midwest Resources, through its counsel, provided documents and information to Reassure America regarding the Miller Policy.  *See* Letter from David P. Schippers to Lawrence R. Scheetz, Jr. of 7/31/09 attached hereto as Exhibit "A".  By way of further answer,

Reassure America had as much information about Mrs. Miller as Midwest Resources. Reassure America was able to contact Mrs. Miller independently.

30.     Denied.  Midwest Resources had no basis to know with specificity Mr. Miller's intent at the time he submitted the application for life insurance other than that he intended to purchase a life insurance policy.  By way of further answer, throughout the summer of 2009, Midwest Resources provided assistance to Reassure America to validate that the Miller Policy was procured with a valid insurable interest.  By way of further answer, by June 2001, Reassure America was on actual notice of all relevant facts including that the owner and beneficiary of the Miller Policy were changed to Midwest Resources.  By way of further answer, the Miller Policy contained a clause that permitted The Midland and Reassure America as its successor to, *inter alia*, contest the validity of the policy for any misrepresentation or nondisclosure of material fact in the Application during the contestability period, but no notice was ever issued that there was a problem; in fact, Midland was content to accept premium payments from Midwest Resources for over seven years.

31.     Denied.  It is specifically denied that the Miller Policy was issued without an insurable interest.  By way of further answer, the application for life insurance and the amendment to the application for life insurance set forth Mr. Miller's age, the existence of a revocable and irrevocable trust, the number of life insurance policies Mr. Miller had in force at the time he was applying for the life insurance policy, the number and face amount of life insurance policies that Mr. Miller was applying for while applying for the Miller Policy and Mr. Miller's income.  By way of further answer, The Midland was aware of all of this information at the time it issued the Miller Policy.  By way of further information, in June 2001, Reassure America became aware that Midwest Resources

6

became the owner and beneficiary of the Miller Policy. By way of further answer Midwest Resources never issued its objection to the transfer. By way of further answer, Reassure America accepted semi-annual premium payments from Midwest Resources over seven years in excess of $100,000.

32.    Denied. The averments of paragraph 32 of the Complaint are conclusions of law to which no response is required and, therefore, they are denied and strict proof is demanded.

33.    Admitted in part and denied in part. It is admitted that Reassure America filed a Complaint for declaratory judgment. By way of further answer, Midwest Resources denies that Reassure America is entitled to a judgment in its favor and that the Miller Policy is void.

34.    Midwest Resources hereby incorporates by reference each and every response to the allegations contained in the preceding paragraphs as if set forth herein at length.

35.    Denied. There is no actual controversy since Midwest Resources' right to the death benefits under the Miller Policy is clear. Reassure America waived its right to contest the transfer of the ownership of and the beneficiary of the Miller Policy during the contestability period and now, in bad faith, nine years after the transfer and after collecting over $100,000 in premiums from Midwest Resources refuses to pay the death benefits under the Miller Policy. By way of further answer, there is no basis to contest the validity of the insurable interest.

36.     Denied.  The averments of paragraph 36 of the Complaint are conclusions of law to which no response is required and, therefore, they are denied and strict proof is demanded.

WHEREFORE, Defendant, Midwest Resources, demands that judgment be entered in its favor, that Midwest Resources be awarded its costs and expenses, including attorneys' fees incurred herein, and that the Court grant such order and further relief as the Court may deem just and proper.

## AFFIRMATIVE DEFENSES

Paragraphs 1 through 36 are incorporated herein by reference as though set forth at length.

37.     Reassure America's claims are barred, in whole or in part, by the doctrine of unclean hands.

38.     Reassure America's claims are barred, in whole or in part, by the equitable doctrines of laches, waiver and estoppel.

39.     Midwest Resources reserves the right to assert such other affirmative defenses as they become available or apparent during the course of discovery.

40.     Midwest Resources denies each and every allegation contained in the Complaint not specifically admitted herein.

WHEREFORE, Defendant, Midwest Resources, demands that judgment be entered in its favor, that Midwest Resources be awarded its costs and expenses, including attorneys' fees incurred herein, and that the Court grant such order and further relief as the Court may deem just and proper.

## COUNTERCLAIMS

For its counterclaim against Reassure America, Midwest Resources alleges as follows:

41.     Midwest Resources is a citizen of Illinois with its principal place of business in Elgin, Illinois.

42.     Reassure America is a citizen of Indiana with its principal place of business in Fort Wayne, Indiana.  Reassure America is the successor in interest to The Midland.

43.     This is an action for breach of contract and bad faith.  This Court has jurisdiction over the causes of action stated herein pursuant to 28 U.S.C. § 1332.

44.     Venue is proper in this District pursuant to 28 U.S.C. § 1441(a), since the underlying action was removed from a state court located in this District.

45.     On or about December 8, 2000, The Midland issued the Miller Policy, a life insurance policy, to Samuel W. Miller insuring the life of Samuel W. Miller for $500,000.  *See* Exhibit A to Plaintiff's Complaint.

46.     The Miller Policy contained a contestable clause that permitted The Midland and Reassure America as its successor to, *inter alia*, contest the validity of the policy for any misrepresentation or nondisclosure of material fact in the application.  The contestability period was from "when the policy goes into force" to two years from the issue date of the policy.

47.     On May 7, 2001, Mr. Miller entered into an agreement of sale with Midwest Resources to assign and transfer all right, title and interest in and to the Miller Policy in exchange for $12,155.00.

9

48.    On May 16, 2001, Mr. Miller, on behalf of the Samuel W. Miller Revocable Trust, executed a Release and Consent to Change Beneficiary of Life Insurance Policy form assigning all rights to the Miller Policy to Midwest Resources.

49.    On May 16, 2001, Mrs. Patricia Miller, Mr. Miller's wife, executed a Release and Consent to Change Beneficiary of Life Insurance Policy form assigning all rights to the Miller Policy to Midwest Resources.

50.    On June 20, 2001, Mr. Miller submitted a change of owner and beneficiary form to Reassure America putting it on actual notice of the change of owner and beneficiary of the Miller Policy to Midwest Resources.  Reassure America accepted the change of owner and beneficiary form and, with full knowledge of the relevant facts, did not object to the transfer; rather, for over seven years, Reassure America collected over $100,000 in premiums without ever raising any issue about the insurable interest.

51.    From December 2001 until December 2008, Midwest Resources paid Reassure America semi-annual premiums on the Miller Policy of over $100,000.

52.    On January 13, 2009, Mr. Miller died.

53.    By the time Mr. Miller died on January 13, 2009, Midwest Resources paid Reassure America more than One Hundred Thousand Dollars ($100,000) in premiums.

54.    During the period from June 2001 until Mr. Miller's death in January 2009, Reassure America never questioned the validity of the Miller Policy or the validity of Midwest's ownership and beneficial interest in the Miller Policy, including during the times specified in the contract to contest any transfer.

55.    On or about February 26, 2009, Midwest Resources timely submitted a claim for the death benefits under the Miller Policy to Reassure America.

56.     During the summer of 2009, Midwest Resources, through its counsel, provided documents and information to Reassure America regarding the Miller Policy. *See* Letter from David P. Schippers to Lawrence R. Scheetz, Jr. of 7/31/09 attached hereto as Exhibit "A".

57.     Midwest Resources, through its counsel, made repeated requests to Reassure America for payment of the death benefits under the Miller Policy. *See* Letter from David P. Schippers to Lawrence R. Scheetz of 8/20/09 and Letter from David P. Schippers to Stephen C. Baker of 10/16/09 attached hereto as Exhibit "B". Reassure America refused to pay the death benefits.

58.     Reassure America refused to pay the death benefits to Midwest.

## COUNT I
### (Breach of Contract)

59.     Midwest Resources re-alleges and incorporates each of the foregoing paragraphs as if fully set forth herein.

60.     Midwest Resources is the owner and beneficiary of the Miller Policy.

61.     Midwest Resources made a valid and timely claim for benefits under the Miller Policy and Reassure America has refused to pay.

62.     Midwest Resources has paid all premiums and has met all other conditions precedent to have a valid contract for insurance coverage and has satisfied the terms of the contract entitling it to full benefits under the contract.

63.     Reassure America breached its contract with Midwest Resources, by denying full payment to it when it sought benefits under the Miller Policy.

64.     Reassure America's breach of contract continues as evidenced by its continued refusal to perform the duties set out in the contract.

As a direct and proximate result of said breach, Midwest Resources, has suffered and continues to suffer substantial damages entitling it to an award of damages as permitted by law.

WHEREFORE, Midwest Resources demands that judgment be entered in its favor and against Reassure America, an award of actual damages in the amount of $500,000, prejudgment interest, costs, and attorney fees and that the Court grant such other and further relief as the Court may deem just and proper.

## COUNT II
### (Bad Faith)

65.     Midwest Resources re-alleges and incorporates each of the foregoing paragraphs as if fully set forth herein.

66.     Midwest Resources is the owner and beneficiary of the Miller Policy.

67.     At all times relevant to the matters alleged herein, Reassure America was under a duty to use good faith in the handling of Midwest Resources', claims.

68.     Reassure America failed and refused to act in good faith, and instead deliberately breached the contract of insurance in bad faith, and in the absence of any legitimate or arguable reason not to perform as required, by intentionally, willfully, deliberately, and/or recklessly refusing to pay benefits which Reassure America, knew were owed to Midwest Resources.

69.     Midwest Resources' claim for benefits is due and payable. Midwest Resources, submitted a demand for payment, which constituted a formal demand for payment, and Reassure America has refused to pay benefits.

70.     Midwest Resources fully complied with all of its obligations, Reassure America was aware of the transfer of interest in 2001, never raised an objection to the insurable interest, collected over $100,000 in premiums, and never advised Midwest Resources of any basis to deny coverage, until the filing of this lawsuit, some eight years beyond the end of the contestability clause in the contract.

71.     Reassure America acted in bad faith in denying benefits to Midwest Resources, and/or in failing to timely make a decision on its claims.

72.     As a direct and proximate result of Reassure America's intentional, willful, deliberate, and/or reckless bad faith conduct and refusal to pay benefits that Reassure America, knew were owed to Midwest Resources, Midwest Resources, was injured and damaged as alleged fully above.  In addition to actual damages, because Reassure America acted willfully and in reckless disregard for Midwest Resources', rights, then Midwest Resources is entitled to an award of punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Midwest Resources demands that judgment be entered in its favor, an award on behalf of Midwest Resources against Reassure America of actual damages of $500,000, prejudgment interest, punitive damages, costs and attorney fees, and that the Court grant such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Midwest Resources hereby demands a trial by jury of all issues in this action.


DATED:  July 19, 2010

Peter F. Vaira (pfv262)
John E. Riley (jer53)
William J. Murray, Jr. (wm409)
VAIRA & RILEY, P.C.
1600 Market Street, Suite 2650
Philadelphia, PA  19103
(215)  751-2700

Attorneys for Defendant-
Counterclaim Plaintiff
Midwest Resources, Ltd.

14

## CERTIFICATE OF SERVICE

I, William J. Murray, Jr., Esquire, hereby certify that on this 19th day of July, 2010, I caused a true and copy of Defendant Midwest Resources, Ltd.'s Answer to Plaintiff's Complaint and Counterclaims was electronically filed and served via electronic mail through the ECF system on:

> Stephen C. Baker
> Lawrence R. Scheetz, Jr.
> Drinker, Biddle & Reath, LLP
> One Logan Square
> 18th and Cherry Streets
> Philadelphia, PA  19103

William J. Murray, Jr. (wjm409)

# EXHIBIT A

LAW OFFICES

**DAVID P. SCHIPPERS & ASSOCIATES, CHARTERED**

TWENTY NORTH CLARK STREET · SUITE 3600

CHICAGO, IL 60602

® 457

DAVID P. SCHIPPERS

TELEPHONE: 312/263-1200
FACSIMILE: 312/419-6588

July 31, 2009

Lawrence R. Scheetz, Jr., Esq.
Drinker, Biddle & Reath, LLP
One Logan Square
18th and Cherry Street
Philadelphia, PA 19106-6996

Re:  Reassure America Life Insurance Company v. Midwest
     Resources, Ltd., et al., Court of Common Pleas,
     Montgomery County, Civil Action No. 09-15191

Dear Mr. Scheetz:

By now you have apparently been able to review and digest the materials that were sent to your office. We are confident that the review has convinced you and your client that Midwest Resources, Ltd. possessed no direct or indirect knowledge of Mr. Miller's intent at the time that he purchased Policy Number K41279. Nor did anyone from Midwest assist in the procurement of that Policy.

As a consequence, there is no valid reason why Reassure America Life Insurance Complaint should continue to withhold payment of the policy death benefit that became due upon Mr. Miller's death. Therefore, on behalf of our client, we are formally demanding that the death benefit be paid forthwith.

If you have any questions, please call.

Very truly yours,

DAVID P. SCHIPPERS &
ASSOCIATES, CHTD.

David P. Schippers

DPS/jeg

cc:  Midwest Resources, Ltd.

bcc:  Mr. Bruce Burns

# EXHIBIT B

LAW OFFICES

## DAVID P. SCHIPPERS & ASSOCIATES, CHARTERED

TWENTY NORTH CLARK STREET · SUITE 3600

CHICAGO, IL 60602

℗ 457

DAVID P. SCHIPPERS

TELEPHONE: 312/263-1200
FACSIMILE: 312/419-6688

August 20, 2009

Lawrence R. Scheetz, Jr., Esq.
Drinker, Biddle & Reath, LLP
One Logan Square
18th and Cherry Street
Philadelphia, PA 19106-6996

> Re: Reassure America Life Insurance Company v. Midwest
> Resources, Ltd., et al., Court of Common Pleas,
> Montgomery County, Civil Action No. 09-15191

Dear Mr. Scheetz:

On July 31, 2009, we wrote to you formally demanding that the Death Benefit under Policy Number K-41279 on the life of Mr. Miller be paid forthwith. To date, we have received no response; nor has any payment been received by our client.

Samuel Miller died some eight months ago and the Death Benefit was payable at that time. Our client has cooperated fully with Reassure under the impression that your client was acting in good faith. The failure of a response now suggests that Midwest may have been wrong.

We do not wish to take any further action to collect what is due, but, if necessary, we will. If Reassure does not intend to honor its obligation, please advise us as soon as possible. If, on the other hand, the delay is not due to any intent to contest Midwest's right to the benefit, please advise us as to when we can expect to be paid.

In any event, we would appreciate a prompt reply to this letter. Thank you.

Very truly yours,

DAVID P. SCHIPPERS & ASSOCIATES,
CHARTERED

David P. Schippers

DPS/jeg
cc: Midwest Resources, Ltd.
bcc: Mr. Bruce Burns

LAW OFFICES

**DAVID P. SCHIPPERS & ASSOCIATES, CHARTERED**

TWENTY NORTH CLARK STREET - SUITE 3600

CHICAGO, IL 60602

® ⬛⬛⬛ 457

DAVID P. SCHIPPERS

TELEPHONE:  312/263-1200
FACSIMILE:  312/419-6688

October 16, 2009

**VIA FAX (215) 988-2757**
**AND BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Stephen C. Baker, Esq.
Drinker, Biddle & Reath, LLP
2000 One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103

    Re: Reassure America Life Insurance Company v. Midwest
       Resources, Ltd., et al., Court of Common Pleas,
       Montgomery County, Civil Action No. 09-15191

Dear Mr. Baker:

    As you know, we have been attempting to secure for our
client, Midwest Resources, Ltd. the insurance benefit proceeds from
your client's Policy Number K41279 in the amount of $500,000.00 in
which Midwest is the named Beneficiary.

    The Policy was issued on December 18, 2000, and, on or
about May 16, 2001, the Ownership and Right to Change the
Beneficiary on the Policy was sold to Midwest. On or about June
21, 2001, your client received and accepted a duly executed
Beneficiary/Ownership Change Form. Furthermore, beginning in
December, 2001, and continuing through December, 2008 Midwest
received and paid invoices for the semi-annual premium of
$7,155.20. By the time of Mr. Miller's death on January 13, 2009,
more than One Hundred Thousand Dollars had been paid and accepted
by your client in premiums.

    Throughout that entire period no inquiry was made and no
question was raised as to the validity of Midwest's ownership and
beneficial interest in the policy.

    A duly executed Claimant's Statement was filed on or
about February 26, 2009, some eight months ago, yet no proceeds
have been forthcoming. Instead our client has been subjected to
the threat of a lawsuit. Despite our full cooperation in
furnishing our client's entire file, we are still being refused
payment of the benefit due.

Stephen C. Baker, Esq.
October 16, 2009
Page -2-

      Midwest's patience is exhausted.  We have been asked to advised you that unless Reassure America pays the total amount of the claim plus interest from the date of Mr. Miller's death by November 1, 2009, we will be forced to take such action as is required to protect our client's interests.

                Very truly yours,

                DAVID P. SCHIPPERS & ASSOCIATES,
                  CHARTERED

                David P. Schippers

DPS/jeg

cc:  Midwest Resources, Ltd.