**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| REASSURE AMERICA LIFE INSURANCE CO., | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 09-5590 |
| | : | |
| MIDWEST RESOURCES, LTD., | : | |
| Defendant | : | |
| | : | |

**Memorandum**

YOHN, J.                                                      February 16, 2011

Reassure America Life Insurance Company ("Reassure") brought this declaratory

judgment action to determine its obligation to pay out benefits on a life insurance policy on the

life of Samuel L. Miller, who transferred his interest in the policy to defendant, Midwest

Resources, Ltd. ("Midwest"), in 2001. Midwest answered the complaint, asserting two

counterclaims for Reassure's nonpayment of the life insurance benefits: breach of contract and

bad faith. Currently before the court is Reassure's motion to dismiss Midwest's counterclaims for

failure to state a cause of action upon which relief may be granted pursuant to Federal Rule of

Civil Procedure 12(b)(6). For the reasons set forth below, I will deny defendant's motion.

**I. Factual and Procedural History**

Midwest asserts the following factual allegations to support its counterclaims.[1] On

December 8, 2000, the Midland, Reassure's predecessor in interest, issued a $500,000 life

insurance policy to Samuel W. Miller (the "Miller Policy"). The Miller Policy contained a

contestability clause that permitted Midland, and Reassure as its successor, to contest the validity

of the policy for a period of two years from the issue date of the policy.

On May 7, 2001, Miller entered into a sales agreement with Midwest to assign and

transfer all rights and interest in the Miller Policy for $12,155. Miller, acting on behalf of the

Samuel W. Miller Revocable Trust, and Miller's wife separately executed two "Release and

Consent to Change Beneficiary of Life Insurance Policy" forms on May 16, 2001, assigning all

rights to the Miller Policy to Midwest. Then, on June 20, 2001, Miller submitted a form to

Reassure to change the named owner and beneficiary of the Miller Policy. Reassure did not

object to the transfer or raise any concerns regarding Midwest's insurable interest. Midwest paid

Reassure semi-annual premiums on the Miller Policy from December 2001 to December 2008

totaling over $100,000.

Miller died on January 13, 2009.  Midwest submitted a claim for death benefits under the

Miller Policy on February 26, 2009. Per Reassure's request, Midwest, through its counsel,

provided documents and information to Reassure regarding the Miller Policy in the summer of

---

[1] I also consider facts derived from the two exhibits attached to Midwest's counterclaim
as well as the insurance contract at issue, which was attached to Reassure's initial complaint. *See
In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that
courts deciding a Rule 12(b)(6) motion to dismiss may consider exhibits attached to a party's
complaint as well as documents referenced in the pleadings that are "integral to . . . the
complaint").

2009. In the following months, Midwest made at least three demands for payment of the death

benefits,[2] but Reassure "refused to pay the death benefits" to Midwest and failed to "timely make

a decision on its claims." (Def.'s Answer & Countercls. ¶¶ 61, 63, 68, 69, 71.)

Reassure filed suit for declaratory judgment in state court on October 30, 2009, to

determine whether Miller obtained the policy with the intention of selling his interest to Midwest

as part of a "STOLI" scheme,[3] which it alleges would render the policy *void ab initio* under

Pennsylvania law. Defendant removed the action to this court on November 23, 2009, and then

filed a motion to dismiss for lack of jurisdiction and venue or, in the alternative, to transfer the

action to the Northern District of Illinois. I denied the motion on June 14, 2010. *Reassure Am.*

*Life Ins. Co. v. Midwest Res., Ltd.*, 721 F. Supp. 2d 346 (E.D. Pa. 2010). Midwest answered the

complaint, and raised two counterclaims. Reassure then filed the instant motion to dismiss

Midwest's counterclaims.

## II. Legal Standard

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[2] Exhibits A and B consist of three letters sent from Midwest's counsel to Reassure's counsel requesting payment of benefits. The first letter, dated July 31, 2009, includes the first formal demand for payment. (Def.'s Answer & Countercls. Ex. A.) The second letter, dated August 20, 2009, complains of Reassure's failure to respond and questions whether Reassure is acting in good faith. (*Id*. Ex. B, "Aug. 20 Letter.") In the third and final letter, dated October 16, 2009, Midwest's counsel repeated its demand for payment and threatened "that unless Reassure America pays the total amount of the claim . . . by November 1, 2009, we will be forced to take such action as is required to protect our client's interests." (*Id*. Ex. B, "Oct. 16 Letter.")

[3] "STOLI" stands for "stranger-originated life insurance." *See Principal Life Ins. Co. v. Minder*, No. 08-5899, 2009 U.S. Dist. LEXIS 56568, at *2 n.1 (E.D. Pa. July 1, 2009).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (2009).

In evaluating a motion to dismiss, "the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210-11. The assumption of truth does not apply to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. Rather, the complaint must contain "'enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

## III. Discussion

Midwest argues that Reassure's refusal to pay benefits to Midwest under the Miller Policy constitutes a breach of contract because Midwest paid all premiums and satisfied all the terms of the contract, thus entitling it to full benefits under the Miller Policy. Midwest further argues that Reassure deliberately breached its contract in bad faith by denying benefits and failing to timely make a decision on its claims. In the instant motion to dismiss, Reassure insists

that it never denied Midwest's claim for benefits; instead, it sought the court's assistance to determine its obligation under the contract. Reassure argues that because seeking declaratory judgment cannot in and of itself constitute a breach of contract or bad faith, Midwest cannot establish its counterclaims.[4] Because Midwest has pleaded enough facts to state plausible claims that Reassure at the least breached the contract *before* it filed for declaratory judgment, and did so in bad faith, I will deny Reassure's motion to dismiss.

## A. Breach of Contract Counterclaim

To establish a cause of action for breach of contract, Midwest must show (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages. *Ware v. Rodale Press., Inc.*, 322 F.3d 218, 225 (3d Cir. 2003). Reassure does not dispute that Midwest sufficiently alleged the first and third elements. Reassure argues that Midwest cannot state a plausible claim that it committed a breach of the contract, because the claim was never denied. According to Reassure, it conducted an

---

[4] Both parties assessed the counterclaims under Pennsylvania law without discussion. Presumably, they agree that Pennsylvania law applies. Although neither party resides in Pennsylvania, I agree that Pennsylvania law applies. Because a federal court sitting in diversity must follow the choice of law rules of the forum state in which it sits, *Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)*, I look to Pennsylvania's choice of law rules. Pennsylvania uses a flexible choice of law method that combines "'the approaches of both [the] Restatement II (contacts establishing significant relationships) and 'interests analysis' (qualitative apprisal of the relevant State's policies with respect to the controversy).'" *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 231 (3d Cir. 2007) (quoting *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978)). In the insurance context, the location of the insured risk is given "'greater weight than any other single contact.'" *Hammersmith*, 480 F.3d at 233 (citing Restatement (Second) of Conflict of Laws § 193 cmt. b). Here, the insured, Miller, resided in Pennsylvania and signed the original life insurance contract with Reassure, as well as the agreement to sell the policy to Midwest, in Pennsylvania. Pennsylvania also has a significant interest in regulating an insurance contract issued to a Pennsylvania insured. *See Hammersmith*, 480 F.3d at 235.

investigation into the existence of an insurable interest after Midwest submitted the claim to determine the validity of the contract. Because it was unable to resolve the question, Reassure argues that it then sought the assistance of the court via a declaratory judgment action. Reassure states that it never denied the claim because implicit in seeking a declaratory judgment is its agreement to pay out benefits if this court finds that the contract is valid. Reassure argues that the only fact that Midwest alleges to support the element of breach is the filing for declaratory judgment and Pennsylvania law clearly establishes that filing for declaratory judgment is not itself a breach of contract. (Mot. to Dismiss Def.'s Countercls. 5 (citing *e.g.*, *Allstate Indem. Co. v. Murphy*, No.4:CV-07-1454, 2008 WL 4415580, at *4 (M.D. Pa. Sept. 25, 2008)).)

But, even if Reassure's filing for declaratory judgment was not itself a breach, this does not completely resolve the issue of whether a breach occurred. Under the Pennsylvania Declaratory Judgment Act ("DJA"), "[a] contract may be construed either before or after there has been a breach thereof." 42 Pa. Cons. Stat. §7534. So the DJA contemplates that a breach of contract could have occurred before the filing for declaratory judgment. The question remains, therefore, whether Reassure had already committed a breach by the time it sought the court's assistance. *See Nat'l Grange Mutual Fire Ins. Co., v. Walsh*, 77 Pa. D.& C. 4th 368, 376 (2005) ("However, Defendants base their breach of contract claims, not solely on the Plaintiff filing a declaratory judgment action against its insured but on their entire course of conduct in handling its contractual duties.")

The majority of case law on which Reassure relies does not help resolve this question, because in those cases, a party sought declaratory judgment to determine its obligations under its contract *before* a claim was ever submitted. For instance, in *Principal Life Insurance Co. v.*

*Minder*, the life insurance company sought the court's assistance to determine the validity of an

alleged STOLI policy *before* the insured died. No. 05-5899, 2009 U.S. Dist. LEXIS 56568, at *9

(E.D. Pa. July 1, 2009). The beneficiary then attempted to use the declaratory judgment suit as

evidence of an anticipatory breach. *Id*. at 10. The court rejected this argument because no claim

for benefits had been made. The court reasoned that the filing of a declaratory judgment action

itself does not rise to the level of an absolute and unequivocal refusal to perform under a valid

contract, which is necessary to establish an anticipatory repudiation. *Id*. at *10-11. *Accord*

*Principal Life Ins. Co. v. Weiss*, No. 09-0840, slip op. at 10-11 (E.D. Pa. July 30, 2009);

*Khodara Environmental II v. Chest Township*, No. 3:2002-96, 2007 WL 4375989, at *5 (W.D.

Pa. Nov. 30, 2007).

The facts alleged in Midwest's counterclaim are distinguishable. Midwest paid all the

premiums owed under the Miller policy from 2001 to 2008. Miller, the insured, died on January

13, 2009, and Midwest submitted a timely claim for benefits on February 26, 2009. So, unlike in

*Minder,* by the time Reassure filed for declaratory judgment, Midwest had allegedly already

completed its obligations under the contract, and the benefits became payable. *See* 2009 U.S.

Dist. LEXIS 56568, at *11 (explaining that because the obligation to pay benefits under the

policy was not yet due, insured's ongoing obligations to pay premiums "are not useless acts and

cannot be excused"). Just as seeking declaratory judgment cannot be evidence of anticipatory

repudiation when a party has not yet committed a breach, it also should not serve as a mechanism

to preempt a legal suit and shield a party from liability if it has already committed a breach.

Without relying on the declaratory judgment action itself as evidence, I conclude that

Midwest's factual allegations plausibly support a claim of breach. Miller transferred the interest

to Midwest and submitted the necessary paperwork to notify Reassure of the change in

ownership and beneficiary on June 20, 2001, well within the two-year contestability period.[5]

After Miller died on January 13, 2009, and a claim for benefits was submitted, Midwest

complied with Reassure's request for additional paperwork relating to the Miller Policy. Midwest

then sent three letters demanding payment to Reassure's counsel. By October 16, 2009, the date

of Midwest's last demand, eight months had passed since Midwest submitted the claim.

According to Reassure, the delay was due to an investigation into the validity of the Miller

Policy. But the investigation occurred well after the two-year contestability period ended and

Reassure had accepted premiums for seven years from Midwest totaling over $100,000.[6] *See e.g.*,

*Kelly v. Prudential Ins. Co. of America*, 6 A.2d 55, 59 (Pa. 1939) (concluding that insurance

company was estopped from claiming plaintiff lacked insurable interest because "[b]y

acquiescence and acceptance of premiums from appellee over a number of years, appellant is

now in no position to complain.")[7]

---

[5] In a typical STOLI arrangement, the insured waits until after the two-year contestability period to transfer the interest in the life insurance policy to prevent the insurance company from contesting the validity of the transaction. *See Lincoln Nat'l Life Ins. Co., v. Calhoun*, 596 F. Supp. 2d 882, 884 (D.N.J. 2009).

[6] This fact distinguishes the present situation from *Allstate Indemnity Co. v. Murphy*, No. 4:CV-07-1354, 2008 WL 4415580 (M.D. Pa. Sept. 25, 2008). In *Allstate*, the insurance policy at issue was effective for one year only and contained a provision stipulating that the insurance company would not cover damages if the insured concealed or misrepresented any information. *Id*. at *2. Allstate had the right, as provided in the contract, to investigate the claim to determine whether there were any misrepresentations, but rather than denying the claim for misrepresentation, the insurance company sought declaratory judgment. *Id*. at *4.

[7] The parties have not cited this case or addressed the issue of why this decision of the Pennsylvania Supreme Court is not binding authority that resolves the contract issue in this action.

Under Pennsylvania law, a life insurance company is generally prohibited from contesting

the validity of the insurance policy for fraud and misrepresentation in the application after the

contestability period is over, unless the contestability clause provides for an exception, such as

nonpayment of premiums. *See New York Life Ins. Co. v. Johnson*, 923 F.2d 279, 280 (3d Cir.

1991) ("The decided Pennsylvania cases have held that an insurance policy obtained by means of

material misrepresentation will, if challenged within the period of contestability, be declared void

*ab initio*."); *Feierman v. Eureka Life Insurance Co.*, 124 A. 171,  (Pa. 1924) ("The

[incontestability] clause means precisely what its language states: the policy will not be

challenged, opposed or litigated, and is indisputable after two years.").

But whether a life insurance company may dispute the validity of a policy for lack of

insurable interest as part of a STOLI scheme after the contestability period ends seems to be an

open question under Pennsylvania law.[8] So there is still an open question as to whether the eight-

month delay actually constitutes a breach. *See e.g.*, *Weiner v. Banner Life Ins. Co.*, No. 02-1351,

2003 U.S. Dist LEXIS 4957, at *25 (E.D. Pa. Feb. 28, 2003) (concluding delay in payment was

not a breach because contestability clause gave defendant contractual right to contest and

investigate claim).

Thus, whether the insurance contract has been breached cannot be resolved on a motion

to dismiss. Reassure's position that it never denied the claim is irrelevant. It concedes that it

---

[8] Though Midwest relies on the fact that Reassure investigated the validity after the incontestability clause ended, it did not provide any case law to support the contention that a delay in payment for such an investigation constituted a breach. Reassure's briefs focus solely on whether seeking declaratory judgment could constitute a breach and also do not reach this issue. This question of law must be determined to resolve not only this counterclaim, but the underlying declaratory judgment action as well.

never *paid* the claim and Midwest alleges that it submitted all of the documents Reassure

requested. Whether it was justified in not paying until it concluded its investigation is a factual

and legal question that requires further development of the record. I therefore conclude that

Midwest sufficiently pleaded its breach of contract counterclaim.

### B. Bad Faith Counterclaim

Midwest argues that Reassure acted in bad faith in violation of 42 Pa. Cons. Stat. § 8371

by failing to make a timely decision on the claim and refusing to make payments under the Miller

Policy.[9] In *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2005), the Third

Circuit predicted that the Pennsylvania Supreme Court would define bad faith according to the

definition set forth by the Pennsylvania Superior Court in *Terletsky v. Prudential Prop. & Cas.*

*Ins. Co.*, 649 A.2d 680 (Pa. Super. Ct. 1994). Bad faith is

> "any frivolous or unfounded refusal to pay proceeds of a policy. . . . For purposes
> of an action against an insurer for failure to pay a claim, such conduct imports a
> dishonest purpose and means a breach of a known duty (i.e., good faith and fair
> dealing), through some motive of self-interest or ill will."

---

[9] Midwest clarified in its opposition brief that it is claiming statutory, rather than
common-law, bad faith and that Reassure acted in bad faith by "engaging in a pattern of dilatory
conduct from February 2009 until October 2009, during which it did not communicate with
counsel for Midwest." (Countercl.-Pl.'s Opp'n to Countercl.-Def.'s Mot. to Dismiss 7, 9.)
Reassure argues that Midwest cannot raise a conclusory allegation of dilatory conduct for the
first time in its brief, when it did not raise it in the counterclaim. But Midwest explicitly alleged
that Reassure "failed to timely make a decision on its claims." (Def.'s Answer & Countercls.
¶ 71.) And Midwest's claim that Reassure did not communicate with Midwest is supported by
the counterclaim and attached exhibits. (Countercls. Ex. B, "Aug. 20 Letter" ("To date we have
received no response").) Midwest may clarify in its briefs that the alleged lack of communication
constituting bad faith occurred only from February until October.

*Terletsky,* 649 A.2d at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990)). In *Toy v. Metro.*

*Life Ins. Co.*, 593 Pa. 20, 41 (Pa. 2007), the Pennsylvania Supreme Court stated that the term bad

faith "concerned the duty of good faith and fair dealing in the parties' contract and the manner by

which an insurer discharged its obligations . . . to pay for a loss." (citing Black's Law Dictionary

139 (6th ed. 1990) ("'Bad Faith' on the part of an insurer is any frivolous or unfounded refusal to

pay proceeds of policy….")).

To establish a claim under section 8371, a plaintiff must "show that defendant did not

have a reasonable basis for denying benefits under the policy and that defendant knew or

recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky,* 649 A.2d at

688. *Accord Nordi v. Keystone Health Plan West Inc.*, 989 A.2d 376, 385 (Pa. Super. Ct. 2010)

(citing *Terletsky,* 649 A.2d at 688); *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 904 (Pa. Super.

Ct. 1999) (citing *MGA Ins. Co. v. Bakos*, 699 A.2d 751, 754 (Pa. Super. 1997)).

As with the breach of contract claim, Reassure insists that it never denied the claim or

refused to pay benefits. Instead, Reassure alleges that it sought a declaratory judgment in order to

determine its obligations under the Miller Policy and that filing for declaratory judgment, alone,

does not constitute bad faith. (Mot. to Dismiss Def.'s Countercls. 8 (citing *e.g.*, *Rite Aid Corp. v.*

*Liberty Mutual Fire Ins. Co.*, 414 F. Supp. 2d 508, 522 (M.D. Pa. 2005).) Therefore, Reassure

argues, Midwest has not asserted any facts to demonstrate that Reassure knew or recklessly

disregarded a lack of reasonable basis in denying a claim.

But section 8371 "need not be limited to the *literal* act of denying a claim." *UPMC*

*Health Sys. v. Metro Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004). Rather, it includes causes of

actions arising out of the bad faith handling or non-payment of claims. *Berks Mutual Leasing Corp. v. Travelers Prop. Cas.,* No. 01-CV-6874, 2002 U.S. Dist. LEXIS 23749, at *13, 18 (E.D. Pa. Dec. 9, 2002). *See also Toy*, 593 Pa. at 41 (explaining that the term bad faith "captured those actions an insurer took when called upon to perform its contractual obligations of . . . payment of a loss that failed to satisfy the duty of good faith and fair dealing.") There must be a claim in dispute and either a refusal to pay benefits or a delay in paying benefits to trigger application of the statute. Although Reassure may not have literally denied Midwest's claim, Reassure's alleged refusal to pay, or at least delay in payment, triggers application of section 8371 if it had no reasonable basis to do so and knew or recklessly disregarded that fact.

Moreover, Midwest has sufficiently pleaded that such refusal or delay was without a reasonable basis. Although seeking declaratory judgment is certainly not alone evidence of bad faith, it may be used in conjunction with other evidence to establish bad faith if there is no reasonable basis to file the action. *Little Souls v. State Auto Mutual Ins., Co.*, No. 03-5722, 2004 WL 503538, at * 4 (E.D. Pa. Mar. 15, 2004). Here, Midwest argues that Reassure sought declaratory judgment in order to avoid liability under Section 8371. Reassure had actual notice of the transfer of interest from Miller to Midwest within the contestability clause period, but it never raised any objections and "never advised Midwest Resources of any basis for denying coverage, until the filing of this lawsuit, some eight years beyond the end of the contestability clause in the contract." (Def.'s Answer & Countercls. ¶ 70.) Midwest argues that Reassure "waited until Mr. Miller, the person whose intent is the key to determine whether the Miller Policy is valid, died." (Countercl.-Pl.'s Opp'n to Countercl.-Def.'s Mot. to Dismiss 9.) After Midwest submitted its claim and complied with Reassure's request for additional paperwork relating to the Miller

Policy, it made a formal demand for payment on July 31, 2009, and another demand on August 20, 2009, in which it also questioned whether Reassure was acting in good faith. Finally, Midwest's counsel sent a third letter on October 16, 2009, threatening to take further action as needed if payment was not made by November 1, 2009. Midwest argues that Reassure filed for declaratory judgment on October 30, 2009, to preempt legal action by Midwest and to avoid liability under section 8371. Midwest will ultimately have to establish that Reassure's failure to pay or failure to timely make a decision on its claims were indeed without reasonable basis, but it has sufficiently pleaded that Reassure acted in bad faith.

## IV. Conclusion

Midwest raises two counterclaims: breach of contract and bad faith. While it may be true that Reassure did not explicitly reject Midwest's claim for benefits, Reassure delayed payment for eight months after the claim was submitted, initiated an investigation to determine the validity of the insurance policy after the two-year contestability period had ended and it had collected premiums for seven years totaling over $100,000, did not, in fact pay the claim, and filed for declaratory judgment only after Midwest requested payment and threatened legal action to collect the benefits. Midwest has sufficiently pleaded "'enough factual matter (taken as true) to suggest'" that Reassure's refusal, or at least failure, to pay the benefits constitutes a breach of contract. *See Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted). Midwest has also sufficiently pleaded a plausible claim that Reassure's conduct constitutes bad faith in violation of 42 Pa. Cons. Stat. §7534. Reassure's motion to dismiss Midwest's counterclaims will therefore be denied. An appropriate order follows.